We'll hear argument first this morning in No. 09-1227, Bond v. United States. Mr. Clement. Mr. Chief Justice, and may it please the Court, the standing of Petitioner to challenge the constitutionality of the Federal statute under which her liberty is being deprived should not be open to serious question. She clearly satisfies this Court's modern tripartite test for standing. Indeed, it is hard to imagine an injury more particularized or concrete than six years in Federal prison. And the liberty interest she seeks to vindicate is her own, not some third party's. In many ways, I think standing is a bit of a misnomer here. Petitioner is not a plaintiff who seeks to invoke the jurisdiction of a Federal court. She is a defendant who has been hailed into court by a Federal prosecutor. There is no logical reason she should not be able to mount a constitutional attack on the statute that is the basis for the prosecution. Do our any of our opinions talk about the standing of a defendant? I can't think of one at the moment. Well, I think it was in the habeas context. But the Spencer decision does talk about how when you have a criminal defendant or somebody who is serving a sentence, their standing to challenge the conviction is essentially one of the easiest standing cases you can imagine. And I think in a sense, the same principles would apply here. But as I say, I think standing is normally something you think about as applying to the plaintiff who is invoking the jurisdiction of the court. So what's really at issue here is something, almost more of a bar on somebody's ability to make an argument that would vindicate their liberty. And I see no reason why in logic that should be the case. Now, the court of appeals essentially didn't apply ordinary standing. Scalia, there are certainly some arguments you can make as a defendant for which you have no standing. You're saying there's no argument you can make as a defendant for which you have no standing? Well, I'm not sure you would call it normal standing principles, Your Honor. There are certainly arguments you could make that you would have no business having anything to do with your case. There's arguments you could make that would have nothing to do with the non-justiciable or the plaintiff. Suppose I raise an establishment clause objection in a matter that does not involve legislation and which our recent opinions say, therefore, does not violate the establishment clause. Well, I guess I'd have to know why you were a defendant in that case and how it had anything to do with the price of tea in that particular case. But you wouldn't. All you would have to know is that the claim is based upon a statute or is not based upon a statute and that our establishment clause jurisprudence says if it's not based upon the statute, it doesn't violate the establishment clause. With respect, I don't think that follows. I mean, I think if the Federal executive tried to imprison you based on your religion, you could take issue with that and say that's an establishment clause violation. The problem in your recent case, the Hine case, is that the only exercise clause violation, I don't think you need the establishment clause for that. Well, if they said, well, we're hereby establishing a religion and you're not part of our religion and we're therefore imprisoning you, I would think you could bring that claim. But in all events, bringing us back to the case before you, I think there's no reason to think that ordinary principles of standing wouldn't give my client every ability to challenge the constitutionality of the statute under which she's being held. Kagan. In the case before us, are you making any claims other than that Congress was acting outside its enumerated powers in enacting the statute? Are there any peculiarly Tenth Amendment claims that you are making? In other words, you admit that Congress is acting within its enumerated powers, and yet the action violates the Tenth Amendment. Are you making any claims of that sort, or are all your claims that the statute here goes beyond Congress's ability to enact it under Article I? Well, Justice Kagan, principally our argument here is an enumerated powers argument. My problem, though, is I'm not sure I understand some clearly defined set of Tenth Amendment claims that are uniquely only Tenth Amendment claims and not enumerated powers. Well, let's just use the Prince case and say even though Congress might have the ability to enact the statute under Article I, there's an independent Tenth Amendment limitation. Do you have any claims of that kind in this case? Well, I don't think so. But let me just say that my problem is, take the Prince case. The Prince case itself went out of its way to say that it was an enumerated power case. In answering an argument in the dissent, the majority opinion says this is not separate from enumerated powers. If you go back to the Prince case, the majority opinion says this is an enumerated powers case. Well, let's assume, Mr. Clement, that there is such a thing, as a claim in which you're saying I concede that this is within Congress's Article I powers, but there is an independent Tenth Amendment limitation on this. Do you have any claims like that? I don't think so, Justice Kagan, but I'd hate to sort of bet my case that on remand I'm not going to say something in making an argument that the government or somebody else thinks is too much of a commandeering claim and too much, not enough, of an enumerated power claim. The government agrees that it's an enumerated power claim in this case. Again, Justice Ginsburg, that is the basis of our claim. But just let me give you a couple of points. You are at no risk if the Court were just limited to what both of you agree is involved, Article I, Section 8. And if there is a difference for commandeering claims, when the case arises, we can deal with it. Well, Justice Ginsburg, you could certainly do that, and as long as it is crystal clear that there will be no obstacle to my client making a constitutional attack on Section 229 on remand, I suppose that's fair enough for my client. But one of the arguments we've preserved, for example, is the argument that Missouri v. Holland is not a blank check for the government, that it requires a balancing of the State's interest against the Federal interest. And if on remand I wax eloquent about the State's interest in criminal prosecution and law enforcement, I would hate for a trap door to open up at that point, and I'd be told, well, wait, wait, wait, that's too much of the State's interest and not enough of your own interest. Kennedy, So you want us to say that when there is a specific injury, specific to your client, that your client has the right to make any argument to show that the government has exceeded its powers under the Constitution, because those powers are limited to protect the liberties of the individual. Exactly right, Justice Kennedy, and that's the fundamental worry I have here, is that this Court's cases have not drawn a distinction between commandeering claims and enumerated power claims. The two cases that the government points to, New York and Prince, both go out of their way to say that they are mirror images or, in fact, enumerated power claims, because a law that commandeers is not necessary and proper. And I do also think that a part of the problem with the suggestion that somehow Tennessee Electric should be reimagined as a third-party standing claim is it fundamentally miscomprehends for whom the structural provisions of the Constitution are therefore. Those provisions are there to protect the liberty of citizens. The United States Court made that point in the Free Enterprise Fund just last term. There was a case where it wasn't the executive complaining about the infringement on executive power. The executive branch ably defended the statute in this Court. It was a disgruntled accounting firm that was allowed to vindicate the separation of powers. Alitos, Can't there be some Tenth Amendment claims that go just to State prerogatives and not to the rights of individuals? Let's say there is a Federal statute that purports to regulate where a State locates its capital or the contents of a State flag, something like that. Wouldn't that go just to State prerogatives and not to individual rights? Clements, I think it would, Justice Alito. My point is not that there is some special rule for the Tenth Amendment that plaintiffs will always have standing. My point is that you should just apply the normal rules. And what I don't think is sustainable is the proposition that in commandeering claims an individual will never have standing. I mean, imagine a Federal statute that purported to save Federal money by commandeering local prosecutors to prosecute Federal crimes. Well, I would hope that a defendant in that kind of case would be able to raise a commandeering argument as a defense. I don't think it would be any different if Congress tried to commandeer the Comptroller General to start bringing criminal prosecutions. In that case you are not making a commandeering claim, then we would be going out of our way to decide that question. And so, you know, are you making a commandeering claim? Clements, I don't self-identify as having made a commandeering claim. But what I would say is we are not asking you to do anything special. I actually think it's the government that's asking you to go out of your way to reconceptualize Tennessee Electric as a different kind of case and preserve it. Alito, well, the problem is if you are just making a treaty power claim, then how are you going to possibly win on remand in the Third Circuit if we reverse and say that your client has standing? Do you think it falls within the prerogatives of a court of appeals to say that Missouri v. Holland was wrong? Well, two things, Justice Alito. First, this is a technical matter. I mean, you know, we could go back to the Third Circuit on our way back to coming here, and we'd still have standing to make an argument that's foreclosed by precedent. But I think it's a mistake to think that Missouri v. Holland is some bright-line rule that forever answers this question. As I read Missouri v. Holland, and as we clearly argued before the Third Circuit, it's not a blank check. It really is more of a balancing test that looks at the State's interest and the Federal interest in assessing whether or not the statute that implements the treaty is necessary and proper. And I think this case compares pretty favorably with Missouri v. Holland, because there the State's interest was very weak because these birds were just flying through on their way and there was no real State interest, or so this Court held, whereas in this case, the State has a real legitimate interest in law enforcement. I also think we ought to be able to make the case that the Federal interest is necessary. Alito, I think it would matter in part for a constitutional avoidance statutory    I think also ought to be open to us. I sort of think by analogy to the Jones case, where this Court said that a Federal statute about arson doesn't apply when a cousin throws a Molotov cocktail at a residence. And I think that's a merits question rather than a standing question. I assume we're not getting into those merits questions here. No, I was just trying to respond to the question of whether we would be foreclosed. You're confusing me. I thought we were just doing standing. No, we're not asking you to do more than do standing, but I do think it's important to understand that we don't think we would be sort of limited to just losing on Missouri v. Holland below and coming back up. We think we have a very good argument about Missouri v. Holland as applied. We also think that there is sort of a statutory construction argument, and this isn't sarin. I mean, there's something odd about the government's theory that says that I can buy a chemical weapon at Amazon.com. That strikes me as odd, and that seems to me the kind of thing where you could make a statutory construction argument to say, well, maybe sarin or maybe actual chemical weapons, that's one thing. But with respect to this kind of commonly available chemical, to say without any jurisdictional element or anything like that that it's a Federal crime seems like an argument we at least ought to have standing to make. Breyer, what do you say about the one thing, the strongest point against you, I think, is a single sentence in that TVA case. It's only one sentence, but it's there in the opinion. And I think what it's saying, Justice Roberts says, well, he already finished the case, he just finished saying, nobody, Congress hasn't violated some rule against creating a system of regulation in this statute, because it isn't regulation. But then he said, but even if it were, even if it were, and if your complaint was that Congress X has acted outside its authority, which they might have thought of at that time, in creating a system, TVA, that competes with local systems, even if that were so, the appellants, absent the State or their officers, would have no standing in this suit to raise the question. Okay. Now, that, they put quite a lot on, but that is what it says. So are we supposed to say, well, that was an ill-considered dictum, or are we supposed to say it was just wrong, or are we supposed to say the law has changed? What, in your view, are we supposed to, or is different, what in our view are we supposed to say? Clemente, can I say two things about that sentence, and then explain what I really think you should say? First of all, the first thing I would say about that sentence is that I don't think read within the context of the entire opinion, it actually means that the Court is trying to impose a special disability on Tenth Amendment claims. Because remember, they've already rejected the plaintiff's basis for having standing. Breyer. It sort of comes out of left field, and it's an overall any, even if. So that says, yes, it's just dictum, it doesn't count. Well, and it's dictum in another way, but what I think it stands for is the proposition to reject the argument that if you don't otherwise have standing under the governing standing rule of the day, that you somehow have a special license to bring a Tenth Amendment claim. And if that's what it stands for, well, it was right then and it continues to be right. A second point to make about it is, it is dictum, and, I mean, if you read the sentence, what it says is the following. It makes a reference to what it's already established a couple of paragraphs earlier, which is the States at issue here have passed laws to accommodate TVA's sale of power. And then it goes on to say, if this were not so, well, what is that? That is a counterfactual hypothetical. It's the worst kind of dictum. It says, if this were not so, if it were not the fact that the States had already taken these actions to affirmatively accommodate, then we'd have a different question and then there wouldn't be standing. So it is dictum, I think, and can be disregarded as such. But really, if you ask me what you should do with it, you should do what you did in Twombly with some language and an opinion that had continued to cause trouble in the 50 years since. You should just say that's no longer good law, because it's not. The central holding of Tennessee Electric was overruled 40 years ago in the Camp case. And I think this language is of a piece from that legal interest test, the legal wrong test of standing. And I think this Court should make clear that it doesn't apply any longer. And the virtue of that would be that it would free up the lower courts to decide these Tenth Amendment standing claims based on an application of normal standing principles. Because that's not happening in the lower court right now. In the lower court right now, what happens is somebody comes in with a Tenth Amendment claim of whatever stripe. Maybe it's a commandeering claim, maybe it's not. And what they're confronted with, especially if it's a commandeering claim, is a quick citation of Tennessee Electric, an equally quick citation of Shearson, which says only this Court can overturn its decisions, and that's it. No standing analysis, nothing subtle about the particular claim. And that's not a sustainable situation, if I can reserve the remainder of my time. Roberts. Thank you, Mr. Clement. Mr. Dreeben. Thank you, Mr. Chief Justice, and may it please the Court. As Petitioner confirmed this morning, the central claim that he is making about the unconstitutionality of Section 229 is that it exceeds Congress's enumerated powers. He may wish to raise as part of that claim a argument that it invades the province that belongs to the States concerning criminal law. He can do that. He has the authority to make such a challenge. The Third Circuit erred in holding to the contrary. Now, the Third Circuit, in reaching the contrary conclusion, relied on this Court's decision in Tennessee Electric v. TVA, and we think that the court of appeals misread that case in concluding that it barred standing, not because it lacks a holding that does bar standing of certain types of claims that allege an invasion of State sovereignty, but because the kind of claim that Petitioner is making is a claim that is not a Tenth Amendment reserved rights claim, but instead an enumerated powers claim. It's kind of hard under our precedence to draw that precise line between enumerated powers and the Tenth Amendment, and it seems a bit much to put defendant to the trouble of trying to do that under the theory from TVA that they have no standing to make a particular type of Tenth Amendment claim. Mr. Chief Justice, I don't think that the defendant needs to be put in any trouble in this case, because the kind of claim that counsel is making on her behalf does assert her right not to be subject to criminal punishment under a law that he says, counsel says, Congress lacks the authority to enact. What if they argue, what if she argues on remand, if there is a remand, that, assuming for the sake of argument, Congress can enact any law that is necessary and proper to implement a treaty, the Tenth Amendment prohibits certain laws that intrude too heavily on State law enforcement prerogatives, State police power. If she makes that argument, which category does that fall into? It falls into the enumerated powers category, Justice Alito, just as last term in the United States v. Comstock, one of the elements that this Court looked at when it decided whether the law authorizing civil commitment in that case was within Congress's enumerated authority plus the necessary and proper clause, the Court looked at the extent to which the law accommodated State interests or alternatively invaded them in an unlawful manner, which is what Mr. Comstock had alleged in that case. Kennedy, you want us to say that even if the defendant in some case might show that a constitutional violation is causing that defendant specific injury, the defendant may not be able to raise the claim if it's a, what you call it, sovereignty claim. In Thornton v. Arkansas, the term limits case, we allowed a citizen of a State to bring a challenge to a statute that the State had enacted inconsistent with its Federal powers. Now, that's the flip side. That was a State statute, not a Federal statute. But it seems to me that is inconsistent with the position you're taking. And it seems to me also consistent, inconsistent with the rule that separation of powers claims can be presented by defendants in Chadha v. INS, Clinton v. New York, the line-item veto case. The whole point of separation of powers, the whole point of Federalism, is that it adheres to the individual's and his or her right to liberty. And if that is infringed by a criminal conviction or in any other way that causes a specific injury, why can't it be raised? I just don't understand your point. Dreeben, Justice Kennedy, I don't take issue with almost everything that you said. The structural protections of the Constitution can be enforced by individuals under the cases that you have cited. What we are dealing with here is two things. First of all, a statement that this Court made in TVA that was part of its holding addressed to what the Court perceived as an attack based on a specific aspect of State sovereignty that belonged to the States. Now, today, we might not understand the claim that was made in that case as implicating a specific sovereign right that's protected under the Tenth Amendment. Today, we might look at it and say this is nothing other than a conventional preemption claim. I don't know whether that's a correct characterization of the argument that was made in the Tennessee electric case. I'm looking at the brief in the case, and the discussion of the Tenth Amendment generally follows a caption that says, ''The power to dispose of Federal property does not include any power to regulate local activities.'' I don't understand why that isn't the same kind of delegated powers argument that you say the Petitioner here is raising. Dreeben, that may be, Justice Alito, I think that it's a little bit difficult to parse precisely what the Petitioner in Tennessee Electric was arguing, but this Court understood the claim as one that bore on Federal regulation of purely local matters in a matter that regulated the internal affairs of the State. And I agree with you that today we might not view that as a Tenth Amendment specific claim. But this Court did in 1939. Breyer, why didn't it just consider it as outside the Commerce Clause? I mean, it had a whole lot of lore. But what is the distinction between saying, as they said then, Court, the TVA regulates electricity rates in Memphis, and that's beyond the power of Congress to enact? In this case, because of the Tenth Amendment and a lot of other things. And in this case, it seems the same, beyond the power of Congress to enact. Dreeben, I think that viewed through today's analytical model, under today's jurisprudence, that is how the case would be viewed. But it was not how it was viewed at the time of TVA. Breyer, how do we know that? I'm not doubting you, I'm just wondering. Dreeben, the language from the sentence, Justice Breyer, that you, in fact, read, discussing whether the presence or absence of a State objection mattered, the Court said, as we've seen, there's no objection from the State, and if this were not so, the appellants absent the States or their officers have no standing to raise any objection under the amendment. Sotomayor, let's assume in this hypothetical, just that case, TVA, State, the Federal Government sets the price, and someone's accused of violating that price. Can that defendant come in and say, just as in TVA, that's unconstitutional, because prices have to be set by the State? Can the defendant say that, or is that an anti-commandeering claim that you say they're barred from raising? That is not an anti-commandeering claim. That is the kind of claim that today we would conceptualize as an enumerated powers claim. Sotomayor, so my question goes back to one that's been asked before, which is, give me a hypothetical of a defendant who has been convicted where it would be a pure anti-commandeering claim that you say they have no standing for. Imagine something for me. Dreeben, back to Justice Kennedy's question, because I wanted to answer the part that I thought distinguished a commandeering case from what Justice Kennedy was talking about. And the point is best made in the context of an example. Under the Sex Offender Registration Act, defendants have challenged the law on numerous grounds, including, number one, Congress lacks its constitutional authority under the Commerce Clause and the Necessary and Proper Clause to criminalize the individual registration requirement imposed on them. All courts that have addressed that have said that's a claim that's within the cognizance of a defendant to bring. Defendants have also said the SORNA statute violates Federal law because it requires States to accept sex offender registrations. It commandeers the States into requiring them to set up a sex offender database. Well, Mr. Dreeben, why shouldn't the defendant be able to raise that argument? If the defendant prevails on that argument, presumably the statute is invalidated and the conviction is overthrown. So why doesn't the defendant have the appropriate interest to raise that argument? Well, Justice Kagan, this is the absolutely crucial point that distinguishes commandeering from most of the structural constitutional provisions that we've been discussing this morning. A State can choose to establish a sex offender database and to receive registrations from people who are required to register under Federal law. And invalidating a Federal law that commanded them to do that does not deprive the State of its ability to say we want to have in our autonomous, sovereign interest a sex offender database that will receive these applications. And as a result, we can't do that. All you're saying is that there's, in that hypothetical, is that there's no violation. That's correct. Everybody goes home. The reason why in that hypothetical the defendant should not raise the issue, because there will be no violation. That's a merits question. That's not a standing question. Why don't we just say the defendant has standing to raise it, and then he'll lose? You could say that, Justice Kagan, but I think that part of the enduring force of TVA is that it adopted a third-party standing rule that is still part of this Court's jurisprudence. Well, why couldn't you have said the same thing in TVA, that while companies are not, yes, the Federal statute requires the companies to charge this price, but they might have decided to charge it on their own anyway, and therefore, you have no standing? Well, the Court did say that there was no standing on the ground that when the specific argument was made, this takes away the right of the State to regulate, because the Federal government is regulating. Ginsburg-McGillivray Mr. Dreeben, is your concern that there would be a clash in these cases that, you've given the example of the State wants to have this registration system. Suppose the defendant can raise that and would prevail. Well, the State is not party to that suit. Its interest has not been represented. Is that your concern? That is a major factor in third-party standing generally, Justice Ginsburg. Kennedy Suppose the State wanted to be commandeered in Pritz. Suppose the State said, we really like having sheriffs take Federal gun registration laws. They can do that. Justice Kennedy, there's nothing to help with this. Kennedy I have serious trouble. A State can surrender its – a State can confer more authority on the Federal government than the Constitution does? Dreeben No, Justice Kennedy, but a State in its sovereign decision-making process can elect to participate in a Federal program. At least that was what Justice O'Connor said in her concurrence in Pritz. Scalia Why isn't standard – standing doctrine able to give you the protection that you're looking after? If indeed you can't tell whether the State did it because it was compelled to or because it wanted to, there was no causation, and you don't have standing. Dreeben That is a perfectly acceptable route of analysis. Scalia I would rather use that route of analysis than inventing the new one that you're urging upon us. Dreeben Well, I don't think they're any different, Justice Scalia. They both concern who holds the right and whether there's any redressal.  All right. So then let's use the one we already have and not have to get into developing one that I've never heard of before. Dreeben I think, Justice Scalia, that all the government is doing in this case is applying conventional standing principles of redressability and third-party standing in a specific context which, as Mr. Clement has made clear, is not before the Court today. This is not a commandeering case. That happens to be the only specific aspect of a State sovereignty claim that is distinct from an enumerated powers claim that the Court has recognized in recent decades. Whether some other sort of claim of State sovereignty might someday be recognized and require its own analysis is well beyond the scope of this case. Our point is a much more basic one. We agree with Petitioner's counsel that he can raise the claim that he has tried to raise. We think that the Third Circuit misunderstood what the TVA decision purported to say when it rejected standing for a type of State sovereignty claim. And we think that the currently recognized State sovereignty claim of commandeering fits into the description of the analytical category that was addressed in TVA. Sotomayor Does our standing analysis differ in any way because this is a treaty power claim versus a commerce clause claim? Your briefs go back and forth on which one it is. Your reply brief now emphasizes commerce clause power, but your main brief was saying this is a treaty provision challenge. Does it differ? Dreeben Justice Sotomayor, I believe that the statute is valid under either the treaty clause plus the necessary improper clause analysis under Missouri v. Holland. It also can be sustained, in our view, under the commerce clause, which follows directly from what this Court said in Resch, when the Court said that the intrastate regulation of a commodity that's used in commerce is a customary, typical method that Congress utilizes. It gave us examples of that, the nuclear, biological, and plastic explosives statutes, which were enacted to implement treaty obligations of the United States. So we think that Alito Given the breadth of this statute, that would be a very far-reaching decision, wouldn't it? Suppose that the Petitioner in this case decided to retaliate against her former friend by pouring a bottle of vinegar in the friend's goldfish bowl. As I read this statute, that would be a violation of this statute, potentially punishable by life imprisonment, wouldn't it? Dreeben I am not sure, Justice Alito. I will assume with you that it is. The statute is Alito If she possesses a chemical weapon, she violates the statute. Dreeben Well, a chemical weapon is a weapon that includes toxic chemicals, and a toxic chemical is a chemical that can cause death to animals. And pouring vinegar in a goldfish bowl, I believe, will cause death to the goldfish. So that's a chemical weapon. Dreeben I'm willing to make the assumption with you and accept that it is a broad-reaching statute, but it was adopted as a broad-reaching statute because this is an area, like the medical marijuana instance in Raich, where effective control of the interstate market requires control of an intrastate market. The statute exempts peaceful uses for agricultural and pharmaceutical purposes of these chemicals. It has other exemptions as well. It was intended to be a comprehensive ban that implemented the United States treaty obligations to eliminate the use of chemical weapons both in military instances and in terrorism. And the difference is that Raich involved one commodity, right, marijuana. This involves potentially thousands and thousands of chemicals. And you would have to make the same argument with respect to every one of those chemicals. If you take together all of the people who are who would use vinegar to kill goldfish or all the people who might use antifreeze to kill dogs, you put all of that together, that has a substantial effect on the interstate market for antifreeze or for vinegar. That would be the argument? Dreeben. I think it's pretty well recognized, Justice Alito, that when Congress seeks to regulate an interstate market, as to which there cannot be any question under the Commerce Clause Congress could do, it can control the intrastate market as necessary in order to assure that its prohibition is effective. Scalia. Trying to drive vinegar out of the interstate market? Do the people know that you're doing this? Only if used for non-experts. Can you really argue that this statute is designed to drive vinegar out of the interstate market? No, of course not. I'm accepting it. Mr. Dreeben, are we getting into the merits of the case? A lot harder than I had intended, Justice Ginsburg. The merits of the case, though, involve both a Commerce Clause argument, a treaty-based argument. As far as the standing principles go, I don't think that there is any difference between them. Missouri v. Holland was a case in which this Court adjudicated whether a law exceeded Congress's enumerated authority. It did that at the behest of a State, but there is no reason why under cases like Lopez and Sabri and Perez that an enumerated powers argument is in any way off-limits to a criminal defendant. It's not. If this case does go back down to the Third Circuit, a Petitioner can make the argument that this law exceeds the enumerated powers. We can rely on the Treaty Clause. It doesn't affect standing in any way. I think that the amicus in support of the judgment makes the assumption that because Missouri v. Holland is good law, there is no possible claim that Petitioner can make that the law would exceed Congress's enumerated authority. Therefore, the amicus says this must be some sort of a special State sovereignty claim of a genre that looks like commandeering, perhaps not articulated quite like that. We don't understand Petitioner to be making that argument. I think Petitioner confirmed today that's not what she's trying to do. And there is no Tenth Amendment claim based on a specific aspect of State sovereignty that Petitioner has ever made. In fact, if you look at Petitioner's brief in support of the rehearing petition, Petitioner said the Tenth Amendment argument raised by Bond was not critical to Bond's other constitutional challenges. It is ancillary to Bond's main argument that Congress acted outside of its enumerated powers. I think that's a correct understanding of what Petitioner has sought to argue in the court below. In our view, she is entitled to make that argument. That argument should also fail on the merits, but that is not an issue that this Court grants a certiorari to decide. Ginsburg. In the category that you would like to have saved, you said commandeering. But you said there conceivably could be others. Is there anything concrete, anything other than commandeering that might fall under this State sovereignty side of the line? Well, as Justice Alito pointed out, the Court has indicated that moving a State capital, a direction to move a State capital, might be an intrusion on sovereignty. Unlikely to come up as defense in a criminal case. Highly unlikely. Thank you, Mr. Dreeben. Thank you. Mr. McAllister. Thank you, Mr. Chief Justice, and may it please the Court. The relevant standing doctrine in this case is the prudential rule against third party standing. No one disputes here that the Petitioner has Article III standing. One of the difficulties in the case is that the only case that mentions specifically standing in this context is the Tennessee Valley Authority case. And it clearly says if it is, in fact, a Tenth Amendment claim, unless you have a State official or the State, there is no standing. Pretty harsh if we're talking about prudential standing to deny that to a criminal defendant, isn't it? It's potentially harsh, Your Honor, but there are lower court cases that have certainly done it. There's some circuit cases where a criminal defendant has tried to make a Tenth Amendment claim and the Court has said no. She still has several other claims here. We all agree, I think, to the extent if you can really characterize her claim as an Article I enumerated powers claim, this Court has assumed many times that defendants have the standing. This Court generally has not discussed it, but it has assumed it. And so there are cases that say no standing for a criminal defendant. She did make a Fifth Amendment due process vagueness challenge. If she had other Bill of Rights types claims, even the treaty power cases like Reed v. Covert recognize you could raise that kind of claim. But the Court's cases do distinguish between Tenth Amendment and other claims. And a lot of the argument here is about what is on the Tenth Amendment side of the line, what is a lack of power, for a better word. Whether it's a – does an Article I power doesn't reach it. And in particular, I would point to the Heller case, which Petitioner mentions in her reply brief, but frankly is off by one page in the citation that the Court should focus on. Pages 579 to 80, the Court says there are three times in the Constitution where the word the people is not talking about individual rights. And the three examples the Court gives are the preamble, Article I, Section 2, and the Tenth Amendment. And the Court says these provisions are about reservations of power, not rights. And also the Prince and the New York v. United States cases say there is something substantive about the Tenth Amendment that is a limit separate and apart from Article I, Section 8, enumerated powers. Sotomayor, what do you see specifically? There's a lot of discussion about labels and what the labels mean in this case. But tell me specifically what – not the word she uses, but the specific ways in which prudential considerations bar her standing, meaning what about the nature of her claim prudentially should counsel us against giving her standing? Well, I would say at least a couple of things, Your Honor. One is usual rule of prudential third-party standing considers the alignment or lack of alignment between the interests of the third party making the claim and the party who is not present, whose claim it really is. And in this case, there is really no argument that her interests align with those of the Commonwealth of Pennsylvania. The Commonwealth, in fact, prosecuted her and it did not stop her. It was unsuccessful as a deterrent. And later, when local police wouldn't be involved, the Federal Government got involved in that. Do you think Pennsylvania would be upset that the Federal Government got her when they couldn't? No, that's my point. And so my point is that her interests are directly contrary to Pennsylvania's interests. So she's not stepping in saying, I share the interests of the State, therefore let me articulate and argue the interests of the State. In another case, conceivably, the State Attorney General exercised his or her prosecutorial discretion not to prosecute this woman, or at least not to prosecute her under the anti-terrorism law that gives her 8 years. Isn't that something for the State to be concerned about? We want to have the discretion of whether to prosecute or not for standard crimes that have no relation to interstate commerce or any other Federal power. Well, it's standard that both sovereigns have the ability often to prosecute if the definitions of crimes overlap, and there's nothing that prevents Pennsylvania from prosecuting her again here. She wants to make the argument that the definitions don't overlap. She wants to make the argument that this is a strictly State local crime and that any attempt by the Federal Government to convert it into a treaty-based terrorism crime is erroneous. Well, and that's what she's trying to do. Why doesn't she have standing to make that argument? Because the lower courts at least, in their defense, understood this to be a Tenth Amendment claim, and there are reasons for that. Now, in this Court, neither Petitioner or the Government really wants to talk about that or argue about that. Instead, they talk about the petition for re-hearing on Bonk after the Third Circuit had decided the case. But if you look in the Joint Appendix, pages 26 to 32, is the supplemental brief that her lawyer filed when the Third Circuit said, post-argument, no, wait a minute, maybe this is a Tenth Amendment case and we have a standing issue. The Government at that point said, hey, good idea. We don't think she does have standing. And she did not come back and answer, I'm not making a Tenth Amendment claim. Her answer is, I'm making a Tenth Amendment claim, but I have standing to make it. That single sentence doesn't seem, I'm trying to figure it out, and it doesn't seem to refer to just all Tenth Amendment claims. There's a footnote, and he talks about no standing in this suit, and then if you look back at the lower court case, it seemed to be referring to a particular argument where the challengers had said the property clause doesn't give authority to the Government to pass this. The reply was, that was true in Alabama, and the Court said it was okay. And then the challengers say, ah, but Alabama agreed. And then Georgia doesn't agree. And it was in that context that Georgia says, it doesn't make any difference. But if Georgia was going to disagree or agree, if that's what it turned on, we better have Georgia say whether they agree or disagree and not have people who aren't Georgia. Now, that's what he seems to be saying to me at the moment. If I'm right, what's comparable to that in this case? Is there some claim that she's making that it would be constitutional if they agree in the State and it wouldn't be if not? I don't think so. I think she means it's constitutional irrespective. McAllister, I mean, she's arguing a lack of power. Breyer, so if that's so, then how can we take this sentence as barring? McAllister, well, I think, again, the sentence, I mean, if we're talking about the sentence in TVA, barring standing in Tenth Amendment claims. Breyer, it just says in this case. It says in this case, but there's no suggestion that it will – frankly, it's hard for us to even tell exactly what this case was in terms of the facts. It's a rather confusing case. No, he cites. He gives a footnote and you read the page and you get an idea. For that particular instance, and that's certainly an example the Court had in mind, the language of TVA, though, is in no way limited to that particular instance. It just says here, if this is a Tenth Amendment claim, there is no standing. And that's why I think for 70 years, the lower courts have wrestled with what is a Tenth Amendment claim, because TVA is there, this Court has announced it, and if it is a Tenth Amendment claim, there's no standing. Sort of back to Justice Sotomayor's question, though, in terms of the third-party prudential aspect of it, again, the issue is, is this person a good person to assert someone else's interests? Yes, she has Article III standing, but not necessarily to make every constitutional claim one might think of. In the Tenth Amendment context, those claims belong to the States. They don't create individual rights. And in fact, there's good reason to think the States do get involved when they perceive actual Tenth Amendment violations. Sotomayor, could you just articulate for me, we're speaking in generalities. What in the nature of her claim, taking the labels away, do you think is a pure Tenth Amendment challenge? I read her complaint and it's always that it's a Tenth Amendment claim because Congress and the President have exceeded their powers in some way. And as I understand her complaint, basically, her argument is that unless the statute is authorized by something in Article I, Section 8, the first 17 clauses, there's no power to enact it. And that's why this case is, frankly, not clearly governed by Lopez or Raich or Morrison. Those were straight commerce power cases under Section 3. This is a treaty power case under Article II, and she only wants to read the first half of the necessary and proper clause, which refers to all the foregoing powers, but it also says necessary and proper all other powers. Sotomayor, you haven't answered my question. Why isn't that a merits decision as to whether or not the President and Congress have the power to enact this legislation? Well, Your Honor, in essence, at the end of the day, it will be a merits question. But from a standing argument, trying to define what is a Tenth Amendment claim, and the point I was trying to make, perhaps not successfully, is that she's not saying – well, she is sort of saying the Article I, Section 8 enumerated powers are the limits, but, frankly, they can't be the limits. In light of the plain language of the necessary and proper clause and Missouri v. Holland and 90 years of this Court's precedent on the treaty power, those powers are not limits. So she's asserting their limits in saying I'm really making an Article I claim, but that simply lets her always have standing, because even in the commandeering cases, the plaintiff can say this is about Article I, this is not about the Tenth Amendment. And so at some point, the Court has to drill down and characterize what the nature of the claim actually is. Well, why do we have to do that? It seems to me we've had a lot of discussion this morning about whether this is an enumerated powers claim or a Tenth Amendment claim. They really do kind of blend together, and it seems to me awfully difficult to put on a criminal defendant the responsibility to decide whether this is going to be an enumerated powers claim or this is going to be a Tenth Amendment claim. The basic principles do kind of merge together, and why does it make, again, why does it make that much of a difference, and why do you put the burden on the defendant to parse the claim one way or another, since I assume they can make pretty much all the same arguments under an enumerated powers, under the enumerated powers clause, an enumerated powers argument. In an enumerated powers case, yes. The problem, I think the difficulty with this case is it's unusual in that there until its reply brief in this Court, the government had not relied on the commerce power. In fact, the government had said throughout, this is a treaty power case, treaty power case, even at the oral argument in the Third Circuit, a judge said couldn't we decide this on the basis of the treaty power or the commerce power, would not that be the easy route, and the government lawyer said no, that would be the hard route. You need to decide it on the basis of the treaty power. So I agree in a Lopez kind of case that really that's where the Court has often said it's just mirror image. If the commerce power doesn't go that far, then by definition it's reserved under the Tenth Amendment. But here it's a treaty power case. It's not an Article I, Section 8 case.             Kagan. Kagan. Kagan. Kagan. Kagan. Kagan. Kagan. Kagan. Kagan. Kagan. Kagan. Kagan. Kagan. in either event is the extent of the necessary and proper clause and what it allows Congress to do. So in that sense, whether it's a treaty power case or not a treaty power case, it just doesn't matter. It's all a question of what Congress's scope of authority is under the necessary and proper clause. Well, I would disagree somewhat, Your Honor, respectfully. Her argument about the necessary and proper clause, I don't think, is that this she's not arguing this statute is irrational or unreasonable. It's a reasonable way to implement the treaty obligations of the United States. What she's arguing is that the treaty power itself does not give Congress the power to enact section 229 unless, in essence, you don't need the treaty. Because you already have the power the government does under the first 17 clauses of article 1, section 8. So yes, the necessary and proper clause is the connection here to article 1, section 8. But it's a minimal connection. And she's not arguing sort of the, I don't think, the Comstock kind of argument that this isn't tied to, rationally, to some sort of articulated power. The government clearly has power to enter treaties under article 2, section 2. And so that, to me, is the distinguishing feature from all of those other article 1, section 8 cases. This, I agree, I don't think I could stand up here and try to argue to you this is a true Tenth Amendment case if, in fact, this had been litigated as a Commerce power case all along. But it wasn't. Alito, I'm not sure I understood what you just said. Are you saying that she is arguing that Congress does not have the power to enact legislation that's necessary and proper for the implementation of treaties, but only for the making of treaties, that she's making that argument that's been made by some academic writers? No, I'm not sure that's what I meant to say, Justice Alito. What I was trying to say is her argument is not well, I think her argument is in essence a challenge to the treaty power. It's one step removed, but it is a challenge to the scope of the treaty power, because she says the statute has to be based on something in article 1, section 8, first 17 clauses. And if it's based on something there, then the treaty power adds nothing to Congress's ability to enact legislation. And that's inconsistent with the plain language of the necessary and proper clause, the fact that the treaty power is in article 2, not in article 1, section 8. And so under her view of the world, as I understand it, and I'm sure Mr. Clement will correct me if I'm wrong about my understanding, is that really you don't need a treaty. The treaty doesn't add anything. I mean, it may be the reason that Congress decides at this point in time to enact section 229. But I believe, as I understand her argument, if it has the Commerce power to do it, the United States never entered or needed to enter a treaty in order for Congress to enact section 229. So in other words, as I understand her argument, the treaty power adds nothing to the domestic legislative authority of Congress. Ginsburg. Mr. McAllister, have you found any case other than this one where a criminal defendant was held to lack standing to challenge a statute under which the defendant was prosecuted? Not in this Court, Justice Ginsburg, but there are examples in the circuits, a few. There are examples from the Eighth Circuit, from the Tenth Circuit, involving criminal prosecutions where the Court characterized the claim as a Tenth Amendment claim and said in light of TVA, the criminal defendant does not have standing to make that claim. So there are examples in the lower courts. I'm not aware of an example in this Court. And I would say this, too, about the — there's some argument about the separation of powers cases in which the Court has typically allowed individuals to make that claim. Again, because we're talking about prudential rules and third-party standing, or at least I'm talking about that, one prudential consideration is in those cases, whether it's Chadha, whether it's Clinton v. New York, the recent pre-Enterprise case, the Federal Government is always very much present. It may be representing the defendant in those cases. It may simply intervene or come in as an amicus. It gets notice if a Federal statute is challenged as being unconstitutional. The difference in the Tenth Amendment setting is there's no mechanism, practically, to notify the States or solicit the States for their interest. Someone's raising this claim that says the government is intruding on your sovereign interest. There's no mechanism to allow the States. Now, if States are aware of it and come and ask to file an amicus, perhaps they'll be allowed to, but there's no mechanism that ensures. Sotomayor, isn't that an issue for a civil lawsuit as opposed to a criminal one? Because all that would happen in a criminal suit is that the defendant's conviction would be undone, but that doesn't mean that the State is bound in some way. The State wasn't a party to the criminal action. Well, the State isn't a party, but what gets said in those cases about the scope of the State's prerogatives vis-a-vis the Federal Government could well be brought to bear in other cases, in other settings, the commandeering cases. I mean, again, the concern in the third-party standing case is that you're not actually a party, but someone else is making arguments, in a sense, on your behalf. They lose because perhaps they don't know all of the arguments they should be making or they don't articulate them the way the State does. There's still stare decisis effect of those decisions on the States. Sotomayor, there's two things that could happen. One is that if the State loses, then and it doesn't want to lose, it passes its own law, or if it wins, if the case is in its favor below, it just lets the status quo go. I still don't understand what the long-term injury to the State is or could be. Well, I guess, again, and maybe I'm misapprehending, but the long-term interest is a decision, say, in the criminal case that says, no, this doesn't intrude on the State's sovereignty, is there as a matter of stare decisis. So if in a later case the State wants to, in fact, assert that this particular statute does intrude on our sovereignty, it's not that they can't necessarily raise the claim, but they will confront contrary precedent that the State never had a chance to voice its opinion or its views at the time the issue was being addressed. Your underlying premise is that the individual has no interest in whether or not the State has surrendered its powers to the Federal Government. And I just don't think the Constitution was framed on that theory. Well, Justice Kennedy, I don't know that I'd say they have no interest, but I am, I guess, the premise I'm asserting is they do not necessarily get to assert the Tenth Amendment claim of the States. New York v. United States, for example, is a case where the State initially said, we're not concerned about this regulation, and then changed its mind, and the State can change its mind and bring a suit, and there's no indication. It does assume, as Justice Kennedy said, that the reason that is there in the Constitution is only for the benefits of the States, and not for the benefit of the people in the States. So if a State chooses to give it away, the individual has no standing. You say it's third-party State. We're raising the States' rights. I think what the other side is arguing, this is not a right of the States. It's a right of the individual to have the State take charge of certain matters and the Federal government take charge of other matters. I don't see why that's any different from an Article I, Section 8 claim. Well, and that's a conclusion that Gort can reach. But what the Petitioner's position essentially holds is that there's never a question of third parties standing for any claim under the Constitution, basically, not the kind I'm talking about, and that no claims are limited to certain categories of litigants. There's a question of causality, so some of them will not be valid, because you can't show that the State was coerced into doing something, and therefore you can't show that the violation of the Constitution caused your injury. And that's – but you're talking now, really, the causality. That's an Article III inquiry, and again, what I'm trying to talk about is separate. The next step, the prudential third-party standing, and I think Petitioner's view is third-party standing is just out the window, whether it's separation of powers, Tenth Amendment, anything. Roberts, thank you. Mr. Clement, you have 4 minutes remaining. Thank you, Mr. Chief Justice. Just a few points in rebuttal. First of all, one reason not to carve out a special rule for commandeering claims is that not all commandeering claims are created equal. Mr. Dreeben raises the commandeering claim that has been litigated in the context of SORNA, the Sex Offender Registration Act. I don't know the details of that enough to know whether that's a valid commandeering claim or not, or whether there's a redressability problem in that particular case, but I can certainly imagine a commandeering case, a Federal statute that purports to commandeer local prosecutors to prosecute Federal crimes, where there would be no standing obstacle. And the problem is, right now, the lower courts aren't resolving the standing issue in the SORNA challenges based on a careful analysis of Article III standing, redressability, or prudential standing, for that matter. They're resolving those challenges with a simple citation to Tennessee Electric and let's move on. And that's really what should stop. A second reason that you should not try to carve out commandeering cases as being somehow the residuum of the Tennessee Electric dictum is because Tennessee Electric says nothing about commandeering cases. It talks broadly about Tenth Amendment claims. You know, we can disagree or agree. It's kind of hard to figure out what exactly the nature of the claim was in Tennessee Electric. I don't think it was really much different from the claim that we're raising here, which is in Tennessee Electric they said, well, if the Federal government gets to regulate power, what's left of State's traditional prerogative to regulate the price for power? Here is if the Federal government can go in and prosecute you for putting vinegar in your neighbor's goldfish bowl, what's left of local law enforcement? I think they're very similar arguments. But whatever else is true, I just don't think Tennessee Electric limited itself to commandeering claims in any way that would allow you to save it. Now, Mr. Dreeben refers to the enduring force of Tennessee Electric. With all due respect, I don't think Tennessee Electric has any enduring force. The central holding of the decision was overruled in King. And the further you go in the decision, the less satisfying it is. If you go all the way to reading the Georgia Power case cited in footnote 27, as Justice Breyer has done, and you look at the role of consent of the States, it turns out that in the district court opinion, that's in the merits section of the opinion. The court's already held, contrary actually to the holding of Tennessee Electric, that the utility companies there had standing. So what you see is, you know what happens if you apply the legal interest test? You hopelessly conflate the merits and the standing question. That's kind of happened today at oral argument. That's a bad approach. The Court was right to get rid of it in Camp, and it should perfect the Camp decision by saying this sentence no longer survives. Two other minor points. One is, on the Commerce Clause, I think Justice Alito shows why the government was right never to make that argument below. But I do think it's important that if this Court says anything about the Commerce Clause issue, it doesn't somehow re-inject it in the case in a way that would not allow us to argue that it has been clearly waived in the Third Circuit. The government gets to confess error. It doesn't get to confess, oh, actually, we have a better argument to defend this statute that we've never raised before. Plain error should be a two-way street, and they should not be allowed to sneak the Commerce Clause back into the case at this late stage. Finally, there is no difference between the separation of powers case and the Federalism case. The best example of that is this Court's Free Enterprise Fund case. When it wants a case to cite for the proposition that the executive branch cannot waive or acquiesce in a separation of powers violation because the separation of powers is there to protect the individual, what does it cite? New York against the United States. Please reverse the decision below. Roberts. Thank you, Mr. Clement. Mr. McAllister, this Court appointed you to brief and argue the case in support of the judgment below. You have ably discharged that responsibility, for which we are grateful. The case is submitted.